UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WESLEY WILLIAMS, | Case No. 1:21-cv-00155-NONE-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO STAY BE GRANTED, THAT PLAINTIFF'S MOTION FOR LEAVE TO AMEND BE DENIED, AND THAT PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE BE DENIED |
| v. | |
| BEER, et al., | |
| Defendants. | (ECF Nos. 34, 37, & 44) |

John Williams ("Plaintiff") is a state prisoner proceeding *pro se* with this civil rights action.  This action is proceeding based on allegations that defendant Oaks physically and sexually assaulted him on August 5, 2019,[1] that defendant Pascoe failed to protect Plaintiff from defendant Oaks, and that defendants Oaks, Pascoe, Riddle, Beer, Garcia, and Cubos failed to provide or summon medical care after the assault.  (ECF Nos. 1, 10, 13, & 25).

On August 19, 2021, Plaintiff filed a motion for leave to amend.  (ECF No. 34).

On August 25, 2021, Defendants filed a motion to stay this case "pending resolution of Plaintiff's criminal case, which is currently pending in the Kings County Superior Court." (ECF No. 37, p. 1).

On October 15, 2021, Plaintiff filed a request for judicial notice.  (ECF No. 44).

For the reasons that follow, the Court will recommend that Defendants' motion to stay be granted, that Plaintiff's motion for leave to amend be denied, and that Plaintiff's request for

---

[1] As Defendants point out in their motion to stay, Plaintiff appears to mistakenly state in his original complaint that the alleged excessive force incident occurred on August 4, 2019.  Other documents, including Plaintiff's proposed amended complaint (ECF No. 35, p. 10), state that the incident occurred on August 5, 2019.

judicial notice be denied.

## I.   MOTION TO STAY

### A. <u>Defendants' Motion</u>

Defendants "move this Court to stay this matter pending resolution of Plaintiff's criminal case, which is currently pending in the Kings County Superior Court.  The grounds for this motion are that the pending criminal matter concerns the same incident at issue in this case that the outcome of that criminal matter could affect the disposition of this case."  (ECF No. 37, p. 1).

"The gravamen of Plaintiff's claim in this case is that on August 5, 2019, Correctional Officer Oaks used excessive force against him by 'stabbing' him with metal handcuff key, kicking him and applying pepper spray during a transport to Kings County Superior Court.  Plaintiff claims that Defendant Pascoe failed to intervene to stop the use of excessive force; and that Defendants Pascoe, Riddle, Garcia, Oaks, Beer and Cubos were deliberately indifferent to Plaintiff's medical needs from injuries he allegedly sustained during the incident."  (<u>Id.</u> at 4) (footnote and citations omitted).

"On about March 24, 2020, the District Attorney of Kings County filed a criminal complaint against Plaintiff, No. 20CM-1704, alleging that Plaintiff on August 5, 2019, committed battery on Officer Oaks, a felony in violation of Penal Code 4501.5.  Plaintiff's criminal matter is still pending, no trial date is set and the next hearing in the matter is September 14, 2021.  If Plaintiff is convicted of the pending criminal charges, this action likely will be barred under *Heck*.  The litigation of the central claims in this case, excessive force against Defendant Oaks and failure to protect against Defendant Pascoe—would necessarily call into question any guilty finding in Plaintiff's criminal case."  (ECF No. 37, pgs. 4-5).

"Staying this case until the criminal charges are resolved will save the resources of the parties and the Court.  Specifically, if Plaintiff is convicted, then Defendants would likely move to dismiss the case based on *Heck*.  If the case is allowed to progress while the criminal charges are pending, the parties will expend resources on a civil case that may be barred, including discovery.  And, Plaintiff's pending criminal case will complicate discovery, as Plaintiff may

invoke his right under the Fifth Amendment to decline to respond to questions concerning the incident.  Accordingly, a stay is warranted under *Wallace* and the Court should stay this action until resolution of Plaintiff's criminal case."  (Id. at 5).

**B.  Plaintiff's Opposition**

Plaintiff opposes the motion.  Plaintiff argues that he should be allowed to proceed with this lawsuit because a Senior Hearing Officer, "acting as a 'Fact Finder' not only disbelieved Defendant Oaks false claim of assault, but also found Plaintiff 'not guilty' at a prison disciplinary hearing…."  (ECF No. 40, p. 2).

Additionally, Plaintiff argues that "the facts asserted in this lawsuit are a completely different set of facts than those alleged in the pending criminal prosecution…."  (Id.).

Moreover, "the criminal prosecution itself is part of an ongoing systemic and retaliatory conspiracy to cover up Defendant Oaks wanton acts which is why defendant's act in concert to destroy, withhold, and intentionally failed to preserve the video taped evidence of the incident in dispute."  (Id. at 2-3) (errors in original).  Plaintiff alleges that there was video footage from Kings County Courthouse of the alleged excessive force incident, and he asked the California Department of Corrections and Rehabilitation to provide the video footage.  However, the footage has gone missing.  Plaintiff argues that this shows that the motion to stay is made in bad faith.

Finally, Plaintiff states that he will not invoke his rights under the Fifth Amendment.

**C.  Legal Standards**

"The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings."  Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995).  "In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence."  Id. (alterations in original).  "Nevertheless, a court may decide in its discretion to stay civil proceedings … when the interests of justice seem [] to require such action."  Id. (alterations in original) (citations and internal quotation marks omitted).

"The decision whether to stay civil proceedings in the face of a parallel criminal

3

proceeding should be made in light of the particular circumstances and competing interests involved in the case.  This means the decisionmaker should consider the extent to which the defendant's fifth amendment rights are implicated.  In addition, the decisionmaker should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation."  Id. at 324-25 (citations and internal quotation marks omitted).

D. **Analysis**

After weighing the Keating factors, the Court recommends staying this civil case pending resolution of the criminal case.[2]

Plaintiff has stated that he will not invoke his rights under the Fifth Amendment, and so consideration of the Fifth Amendment does not weigh in favor of a stay.

However, the Court finds that, overall, the other factors support a stay.  As to the first factor, while Plaintiff has an interest in the expeditious resolution of this action, Plaintiff has not pointed to any prejudice that he will suffer as a result of the stay.  Moreover, any prejudice to Plaintiff is minimal given that both proceedings involve similar facts and witnesses, and it is unlikely that evidence will be lost or memories will fade with passage of time.  See, e.g., McCormick v. Rexroth, 2010 WL 934242, at *3 (N.D. Cal. Mar. 15, 2010) ("the fact that the witnesses for the two proceedings are likely to include many of the same people providing much of the same testimony should reduce the danger that any testimony will be lost as a result

_____

[2] The Court grants Defendants' unopposed request for the Court to take judicial notice of the criminal complaint against Plaintiff.  U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (citation and internal quotation marks omitted).

of the stay."). Overall, the Court finds that this factor slightly weights in favor of allowing this case to proceed.

As to the second factor, the burden on Defendants, Defendants may otherwise have to litigate a case that could be subject to a <u>Heck</u> bar defense. If the court in the criminal action considers Plaintiff's factual allegations regarding the August 5, 2019, such findings may be binding in this Court. See <u>Wallace v. Kato</u>, 549 U.S. 384, 394, (2007)) ("If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit."). Thus, this factor weighs in favor of staying this case.

As to the third factor, judicial efficiency, this factor also favors imposition of a stay because Plaintiff's criminal action involves many of the same facts and possibly some of the same issues. Thus, it serves the interest of judicial economy for the Court to stay this case and not duplicate the work of the court considering Plaintiff's criminal case. Additionally, due to a state of judicial emergency (<u>see, e.g.</u>, ECF No. 4), no district judge has yet been assigned to this case and the judicial resources of District Judge Dale A. Drozd are limited.

As to the fourth factor, neither party has argued that the interests of persons not parties to the civil litigation will be affected. Thus, this factor is neutral.

Finally, neither party has argued that either a stay or proceeding in this case is in the public's interest. Accordingly, this factor is neutral.

Plaintiff's arguments as to why this case should not be stayed are unavailing. Plaintiff alleges that a Senior Hearing Officer disbelieved Defendant Oaks' false claim of assault and found Plaintiff not guilty of assaulting defendant Oaks at a prison disciplinary proceeding. However, Plaintiff has not submitted any evidence in support of this assertion or provided any explanation as to why this is relevant as to whether this proceeding should be stayed. Any such argument and related evidence, to the extent it exists, will be available once the stay is lifted.

Next, Plaintiff argues that his criminal proceeding is based on an entirely different set of facts. But this is a conclusory assertion, and Plaintiff does not explain the different set of facts that it is based on. The two incidents appear to have occurred on the same day (August 5,

2019), and involve the same individual (defendant Oaks).  Moreover, Plaintiff himself seems to allege that defendant Oaks attempted to cover up the excessive force incident by falsely alleging that Plaintiff assaulted him.  In fact, in his proposed amended complaint, Plaintiff appears to be directly attacking the criminal prosecution by alleging that he is being maliciously prosecuted.  (See, e.g., ECF No. 35 p. 20) ("Following efforts by Defendant's Allison and Gamboa to withhold and conceal the video evidence of Defendant Oaks malicious attack on Plaintiff which went on over five minutes, and succeeding in aiding Defendant's Oaks and Pascoe evade cooperation in administrative I.E process, Defendant's Allison and Gamboa again use influence with the Kings County District Attorney Defendant Fagundes to initiate an ongoing retaliatory criminal prosecution in Case No. 20CM-1704….") (errors in original).  Accordingly, these cases appear to be based on the same underlying incident.

Finally, Plaintiff alleges that Defendants are acting in bad faith because they destroyed or failed to preserve video footage.  However, this evidentiary issue may be litigated once the stay is lifted.

After weighing the factors, the Court recommends staying this case pending resolution of the criminal case.  See also Wallace, 549 U.S. at 393-94 (2007) ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."); Peyton v. Burdick, 358 F. App'x 961, 962 (9th Cir. 2009) ("Because Peyton's claims implicate rulings that are likely to be made in the pending state court criminal proceeding, the district court should have stayed the section 1983 action until the criminal case ... is ended.") (alteration in original) (citations and internal quotation marks omitted).

\\\

\\\

\\\

\\\

## II.    MOTION FOR LEAVE TO AMEND

### A.  Plaintiff's Motion

This case is currently proceeding on Plaintiff's Eighth Amendment excessive force claim against defendant Oaks; Plaintiff's Eighth Amendment failure to protect claim against defendant Pascoe; Plaintiff's Eighth Amendment sexual assault claim against defendant Oaks; and Plaintiff's Eighth Amendment claim for deliberate indifference to his serious medical needs against defendants Oaks, Pascoe, Riddle, Beer, Garcia, and Cubos.  (ECF Nos. 13 & 25).

In his motion for leave to amend, Plaintiff states that he is seeking leave to amend to add a malicious prosecution claim and a retaliation claim against Fagundes and Gamboa.  (ECF No. 34, p. 2).  However, in his scheduling conference statement, he states that he "moved to amend to add claims of retaliation, conspiracy, and [] Fagundes and Allison as defendant's [sic]."  (ECF No. 36, p. 2).

### B.  Plaintiff's Proposed Amended Complaint

In total, Plaintiff's proposed amended complaint is twenty-two pages, and includes nine defendants.  It is not clear how many claims Plaintiff is attempting to bring.  In the introduction, Plaintiff states that Defendants acted "in violation of Plaintiff civil and constitutional rights under the 1st, 6th, 8th, and 14th Amendment's to the United States Constitution, the Americans with Disability Act of 1990, Section 504 of the Rehabilitation Act of 1973, the Institutionalized Persons Act, United States Code Sections 241, 242, and 245, and 42 U.S.C. §§ 1982, 1983; 1985, and 1986."  (ECF No. 35, pgs. 1-2) (errors in original). Plaintiff also states that this Court has jurisdiction over his state law claims (id. at 2), and he asks for a declaration that the acts and omissions of Defendants violated Plaintiff's rights under the laws of the State of California.  He does not, however, specify what state law claims he is attempting to bring.

In the body of his complaint, Plaintiff does list two claims, as well as the facts supporting those claims.

Claim one is a claim for a "conspiracy to retaliate through malicious prosecution; intimidation; unnecessary force; and sexual harassment for cooperating as witness in an

investigation." (ECF No. 35, p. 4).

Plaintiff alleges that, during the relevant times, Plaintiff was a participant in the California Department of Corrections and Rehabilitation's Mental Health Services Delivery System ("MHSDS") at the Enhanced Outpatient Program ("EOP") and/or the Psychiatric Inpatient Program ("PIP") level of care. EOP is a special program for prisoners who are gravely mentally disabled, and who are unable to care for themselves in a prison general population setting. PIP is a special program for EOP's who require more intense mental health treatment in a hospital setting.

Plaintiff came forward as a witness to a gross misuse of force by correctional officers, and he provided defendant Allison and investigators working for defendant Gamboa a written copy of the statement he made.[3]

On January 14, 2018, Plaintiff was confronted by correctional officer M. Cota[4] to recant his statement. When Plaintiff refused, M. Cota fabricated an indecent exposure charge in a Rules Violation Report. On February 16, 2018, Plaintiff was found not guilty at a prison disciplinary hearing, which defendant Gamboa affirmed on February 19, 2018. In a July 15 2018 memorandum in response to a grievance Plaintiff filed, M. Cota was found to have violated California Department of Corrections and Rehabilitation ("CDCR") policy.

Around March of 2018, Plaintiff was transferred from Corcoran State Prison ("CSP") to Richard J. Donovan ("RJD"), but around June of 2018 was compelled to return to CSP to be transported to Kings County Superior Court for criminal prosecution on the false and retaliatory indecent exposure charge by M. Cota.

Defendants Allison and Gamboa have influence with the Kings County District Attorney's Office, including with defendant Fagundes, the district attorney. Defendant Fagundes relied on defendant Allison's and defendant Gamboa's influence over CSP and CDCR officials to remain in office through votes and donations. In exchange, defendant Fagundes ratifies practices which instruct prosecuting district attorneys to pursue criminal

---

[3] Plaintiff refers to exhibits, but no exhibits are attached.
[4] M. Cota is not a defendant in this action.

charges and convictions on any and all cases referred by CSP, defendant Allison, defendant Gamboa, or on "defendant's" behalf.

Despite undisputed evidence of unclean hands, defendants Fagundes, Allison, and Gamboa arranged for Plaintiff's transfer to CSP from RJD, then back to RJD, whenever his criminal case was called for prosecution in the Kings County court. The repeated transfers to CSP, coupled by ongoing retaliatory harassments while temporarily housed at CSP, were all intended to compel Plaintiff to accept a plea, as defendants Allison and Gamboa intended to use Plaintiff's guilty plea to benefit M. Cota.

Initially, defendant Garcia was responsible for transporting Plaintiff from CSP to Kings County Court. On July 26, 2018, and on August 1, 2018, while on surveillance cameras, defendant Garcia tightened his grip on the chain and padlock, using the clinch and the push of his arm to guide Plaintiff, while the weight of his hand rested heavily at the center of Plaintiff's buttocks. On July 26, 2018, when Plaintiff complained of pain due to defendant Garcia's fierce grip, defendant Garcia imposed an even tighter grip, forcing Plaintiff against the courthouse wall, as welts began to form at each side of Plaintiff's waist. When Plaintiff complained again on August 1, 2018, defendant Garcia yelled at Plaintiff that he will touch Plaintiff anyway he wants.

Plaintiff filed a grievance, but the courthouse video surveillance was intentionally ignored to avoid discipline, training, and supervision of defendant Garcia.

On February 8, 2019, defendant Beer failed to remove a razor from Plaintiff's cell, even though Plaintiff had just used the razor to self-mutilate. After defendant Beer failed to remove the razor, Plaintiff once again used it to self-mutilate.

Plaintiff alleges that the totality of events were part of an ongoing "retaliatory network" as a direct result of Plaintiff prevailing on his grievance against M. Cota, and for Plaintiff's ongoing challenge and defense to the criminal case.

Claim two is a claim for an "ongoing conspiracy to retaliate through sexual assault; excessive force; chemical assault; malicious prosecution; failure to protect; and denial of serious medical needs based on systemic prison practice." (ECF No. 35, p. 10).

Plaintiff alleges that on August 5, 2019, defendants Oaks and Pasco were assigned to retrieve Plaintiff from CSP and transport him to the Kings County court.  The judge dismissed the criminal case.

Defendant Pascoe took out a cellphone to report the court's decision, while defendant Oaks asked Plaintiff for details on the case, and then said "O, now I remember your case."  (Id. at 11).

As Plaintiff was getting back into the transit van, he felt a sharp punctured pain in the buttocks near the rectum, which caused Plaintiff to fall face first into the rear seat.  Defendant Oaks then said "that[']s from Corcoran."  (Id.).  As Plaintiff turned to face forward, defendant Oaks stood holding a metal-pencil-like handcuff key.  As Plaintiff started to complain, defendant Oaks threatened to "stick [the key] all the way up [Plaintiff's] black ass."  (Id.).

When Plaintiff started kicking the door and yelling "help," defendant Oaks started kicking Plaintiff.  Defendant Oaks insulted Plaintiff and called him a snitch between kicks. Defendant Oaks then told Plaintiff that for each time he yells for help or kicks the door screaming, defendant Oaks was going to come back and kick Plaintiff.  Plaintiff yelled three or four times, and each time, defendant Oaks came back and kicked Plaintiff repeatedly while insulting him and calling him a snitch.

Defendant Pascoe watched defendant Oaks attack Plaintiff and acted as lookout.

Eventually, defendant Oaks pepper sprayed Plaintiff to silence his cries for help. Defendant Oaks then told defendant Pasco that "we need to say he tried to attack me to fix this."  (Id. at 14).

Meanwhile, Plaintiff was left inside the O.C. contaminated van for nearly an hour, choking, blind, burning, and unable to breathe.  Defendant Riddle opened the van's side sliding door to ask Plaintiff if he needed medical aid.  Plaintiff said "yes," but defendant Riddle closed the van's door.

Plaintiff then heard defendants Riddle, Garcia, Pascoe, and Oaks outside the transit van, conspiring.  Defendant Riddle said that because Plaintiff is claiming injuries, defendant Beer ordered defendant Riddle and defendant Garcia to relieve defendants Oaks and Pascoe,

"because for this to work we have to take him to do the medical evaluation at the prison.  So we have to take him to Corcoran."  (Id.).

Plaintiff was then transported to CSP.  Defendant Beer ordered that the High Risk Equipment restraints not be removed, which prevented decontamination from the pepper spray and a medical evaluation for injuries.  Additionally, defendant Beer told defendant Cubos to "'only document what you see,' which resulted in an inadequate medical report of injury…." (Id. at 15).  Defendant Beer then ordered Plaintiff transported to a different prison in the same pepper-spray contaminated holding cage.  The ride lasted 8-10 hours.

Upon arriving on August 5, 2019, CSP had already forwarded an administrative segregation unit placement notice, which alleged that Plaintiff kicked a holding cage door that swung and struck defendant Oaks in the torso.

Officials failed to properly process the grievance he filed related to the assault on August 5, 2019.

On August 22, 2019, Plaintiff was issued a Rules Violation Report alleging that the cuts to defendant Oaks' left leg were caused by Plaintiff kicking the holding cage door, even though they were sustained when he kicked Plaintiff.

Defendants Gamboa, Oaks, and Pascoe refused to cooperate in the RVR investigation, in violation of CDCR policy.

On October 5, 2019, the Senior Hearing Officer determined that Plaintiff's account of events and Defendants' refusal to cooperate with the investigative process meant there was insufficient evidence and found Plaintiff not guilty.

Around August 25, 2019, Plaintiff filed complaints with various agencies, including defendant Allison, concerning the CSP Defendants' cover-up by withholding video evidence of the assault on Plaintiff.  Additionally, Plaintiff's mother filed two citizen's complaints concerning the assault on Plaintiff.  However, both complaints were forwarded to defendant Gamboa who then forwarded them to Plaintiff without adhering to applicable law.  This was part of the effort to aid in the cover-up of defendant Oaks' wanton act.

Following efforts by defendants Allison and Gamboa to withhold and conceal the video

evidence of defendant Oaks' attack, defendants Allison and Gamboa again used their influence with defendant Fagundes to initiate an ongoing retaliatory criminal prosecution.  Plaintiff alleges that evidence of unclean hands by CSP officials, including defendants Oaks, Pascoe, Beer, Garcia, and Riddle, was destroyed, concealed, and obstructed so a malicious retaliatory prosecution could help cover-up defendant Oaks' wanton act.

In August of 2020, Plaintiff filed a case with the State Bar of California concerning the practices maintained by defendant Fagundes.  This case is still pending.

### C. **Legal Standards**

Courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[T]his policy is to be applied with extreme liberality."  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990); see also Waldrip v. Hall, 548 F.3d 729, 732 (9th Cir. 2008).  "However, liberality in granting leave to amend is subject to several limitations.  Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay."  Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citations and internal quotation marks omitted); see also Waldrip, 548 F.3d at 732.

### D. **Analysis**

The Court will recommend that Plaintiff's motion for leave to amend be denied because the complaint fails to comply with Federal Rule of Civil Procedure 8(a).  Additionally, in his motion to amend Plaintiff fails to mention most of the new claims that he listed in his complaint.  Plaintiff also fails to state a claim for a conspiracy to retaliate.

The only two claims that Plaintiff supports with facts in his proposed amended complaint appear to be the claims he is attempting to add.   He did not include the claims that are currently proceeding.  As the Court informed Plaintiff in the screening order, "an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d. 896, 907 n.1 (9th Cir. 2012) (en banc), and must be complete in itself without reference to the prior or superseded pleading, Local Rule 220.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged."

(ECF No. 10, p. 15).  Therefore, the Court also recommends denying leave to amend because the amended complaint does not include any of the claims currently proceeding in this case.

### i.  Federal Rule of Civil Procedure 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although a complaint is not required to include detailed factual allegations, it must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  It must also contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Moreover, to the extent Plaintiff is bringing his claims under 42 U.S.C. § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.

Here, Plaintiff's complaint fails to comply with Rule 8(a).  Plaintiff does not list each claim he is bringing against each defendant, along with the facts supporting each claim.  Instead, he includes a long list of claims.  As mentioned above, in the introduction, Plaintiff states that Defendants acted "in violation of Plaintiff civil and constitutional rights under the 1st, 6th, 8th, and 14th Amendment's to the United States Constitution, the Americans with Disability Act of 1990, Section 504 of the Rehabilitation Act of 1973, the Institutionalized Persons Act, United States Code Sections 241, 242, and 245, and 42 U.S.C. §§ 1982, 1983; 1985, and 1986."  (ECF No. 35, pgs. 1-2) (errors in original).  Plaintiff also states that this Court has jurisdiction over Plaintiff's state law claims (id. at 2), and asks for a declaration that the acts and omissions of Defendants violated Plaintiff's rights under the laws of the State of California.  He does not, however, specify what state law claims he is attempting to bring.  Following the list of claims, Plaintiff provides a narrative of what occurred over a span of over two years.

As the Court previously informed Plaintiff (ECF No. 31), this is improper.  See also Pinzon v. Jensen, 2009 WL 231164, at *2 (E.D. Cal., Jan. 30, 2009) ("Although Plaintiff

attempts to allege many causes of action and provides a description of his alleged experiences, his narrative-style complaint is insufficient to state legally cognizable causes of action.  It is Plaintiff's burden, not that of the court, to separately identify claims and state facts in support of each claim.").  Accordingly, Plaintiff's complaint fails to comply with Rule 8(a).

Moreover, while the Court directed Plaintiff to explain "the changes he is attempting to make to his original complaint" in his motion for leave to amend (ECF No. 31, p. 2), Plaintiff failed to list most of these claims, even though most of them are new.

Accordingly, Plaintiff's motion for leave to amend should be denied.

However, as Plaintiff did allege two claims in the body of his complaint, as well as the facts supporting those claims, the Court will also separately address those claims.

### ii.   Conspiracy to Retaliate

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"'[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm,' Brodheim, 584 F.3d at 1269, that is 'more than minimal,' Robinson, 408 F.3d at 568 n.11.  That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage.  Id. at 569." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration in original).

While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir.1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001).  Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities.  Rhodes, 408 F.3d at 567.

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.1989)). Additionally, Plaintiff must show that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974). "[M]ore than vague conclusory allegations are required to state a [conspiracy] claim." Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

Both Claim one and two are based on a conspiracy to retaliate.

As to Plaintiff's first claim, Plaintiff alleges that certain defendants conspired to retaliate against Plaintiff because he prevailed on his grievance against M. Cota and because of his ongoing challenge and defense to the criminal case. However, there are no allegations suggesting that any defendant retaliated against Plaintiff because he prevailed on his grievance against M. Cota or because of his challenge and defense to the first criminal case. Additionally, Plaintiff includes only vague and conclusory allegations regarding a conspiracy between Fagundes, Allison, and Gamboa, which is insufficient to state a conspiracy claim. Accordingly, claim one fails to state a claim.

As to claim two, it is not clear what protected conduct allegedly led to the adverse actions. Plaintiff does allege that he was assaulted and not protected. However, there are no allegations suggesting that any defendants conspired to assault Plaintiff or to fail to protect Plaintiff in retaliation for Plaintiff engaging in constitutionally protected conduct.

The Court notes that it is a closer call as to whether Plaintiff would have a retaliation claim against only defendant Oaks. Plaintiff alleges that, after sticking Plaintiff with the metal-

pencil-like handcuff key, defendant Oaks stated "that[']s from Corcoran."  (ECF No. 35, p. 11).

Additionally, when kicking Plaintiff, defendant Oaks called Plaintiff a snitch.  (Id. at 12).

However, the alleged assault by defendant Oaks happened over a year after Plaintiff provided

his statement regarding a gross misuse of force by correctional officers and filed a grievance

against M. Cota, and there is nothing directly connecting defendant Oaks' statement to these

actions by Plaintiff.  Moreover, defendant Oaks used other insults as well, and it appears that

defendant Oaks kicked Plaintiff because Plaintiff was screaming and/or kicking the door.  In

fact, defendant Oaks allegedly told Plaintiff that he was going to kick Plaintiff for each time he

yelled or kicked the door.  (Id. at 12-13).  Therefore, it appears that the kicks were not done in

retaliation for Plaintiff providing his statement regarding a gross misuse of force by

correctional officers or the grievance he filed against M. Cota, and thus do not constitute a

claim for retaliation under the First Amendment.  Furthermore, Plaintiff's amended complaint

only asserts a claim for conspiracy to retaliate, and Plaintiff has not sufficiently alleged that

defendant Oaks conspired with anyone to retaliate against Plaintiff in violation of the First

Amendment.

Plaintiff also alleges he was not provided with medical care, but there are no allegations

suggesting that this was part of a conspiracy to retaliate against Plaintiff.

Finally, Plaintiff alleges that certain defendants conspired to retaliate against him by

having him prosecuted.  Plaintiff has sufficiently alleged that certain defendants agreed to have

him prosecuted.  However, the claim that this violated his constitutional rights still fails.  First,

there are no allegations suggesting that any defendants conspired to have Plaintiff prosecuted

because he engaged in constitutionally protected conduct or for the purpose of denying Plaintiff

a specific constitutional right.[5]  Instead, Plaintiff appears to allege that they did it to cover-up

---

[5] "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the
defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of
denying [him] equal protection or another specific constitutional right.  Malicious prosecution actions are not
limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused
the charges to be filed."  Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (alterations in original)
(citations and internal quotation marks omitted).  The Ninth Circuit has also explained that, "[i]n this circuit, the
general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is
available within the state judicial system to provide a remedy.  However, an exception exists to the general rule

the wrongdoing of defendant Oaks.

Accordingly, Plaintiff fails to state a claim for a conspiracy to retaliate against any defendant, and Plaintiff's motion for leave to amend should be denied as futile.

## III. PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

Plaintiff asks the Court to take judicial notice of a state court case against Fagundes, which Plaintiff alleges raises claims against Fagundes by a subordinate that are the same, or similar to, those raised by Plaintiff in this action as they relate to malicious prosecutions, abuse of prosecuting authority, and tampering with evidence to ensure and secure convictions.

Plaintiff's request will be denied because Plaintiff failed to supply the Court with the necessary information.  While Plaintiff provides a case name and number, the case is being heard in state court and the documents filed in the state court case are not readily accessible.  Additionally, Plaintiff did not provide any documents that were filed in the case, such as a copy of the complaint, that he wants the Court to judicially notice.

Moreover, Fagundes is not currently a defendant in this action, Plaintiff's request for judicial notice has no bearing on the motion for leave to amend, and the Court is recommending that Plaintiff's motion for leave to amend be denied.  Thus, there appears to be no reason to take judicial notice of a case against Fagundes in this action.

Accordingly, the Court will recommend that Plaintiff's request for judicial notice be denied.

\\\

\\\

---

when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987) (citations and internal quotation marks omitted).

The Ninth Circuit has "incorporated the relevant elements of the common law tort of malicious prosecution into [the] analysis under § 1983." Id.  "The essential elements of the tort are the same in both the criminal and the civil contexts.  In every case, in order to establish a cause of action for malicious prosecution a plaintiff must plead and prove that the prior proceeding, commenced by or at the direction of the malicious prosecution defendant, was: (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice." Villa v. Cole, 4 Cal. App. 4th 1327, 1335 (1992).  See also McCubbrey v. Veninga, 39 F.3d 1054, 1055 (9th Cir. 1994).  A plaintiff must also show "resulting damage…." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir.2008) (quoting Harbor Ins. Co. v. Cent. Nat'l Ins. Co., 165 Cal.App.3d 1029, 211 Cal.Rptr. 902, 907 (1985)).

## IV.   RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.  This case be STAYED pending resolution of the related state criminal proceeding and until further order of the Court.

2.  Defendants be required to file a status report within fourteen days after the criminal case is resolved, or one year after the date of the stay, whichever is earlier.

3.  Plaintiff's motion for leave to amend be DENIED.

4.  Plaintiff's request for judicial notice be DENIED.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 21, 2021**                    /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE