UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN W. WILLIAMS,<br><br>       Plaintiff,<br><br>  v.<br><br>BEER, *et al.*,<br><br>       Defendants. | Case No. 1:21-cv-00155-KES-EPG (PC)<br><br>ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFF'S MOTION TO COMPEL DISCOVERY<br><br>(ECF No. 146) |

Plaintiff John Williams is a state prisoner proceeding *pro se* in this civil action filed pursuant to 42 U.S.C. § 1983.

Now before the Court is Plaintiff's motion to compel Defendants Beer, Oaks, Pascoe, Riddle, and Garcia to provide further responses to certain interrogatories that Plaintiff has propounded on them. (ECF No. 146).

For the reasons explained below, the Court will grant Plaintiff's motion to compel, in part, and deny it, in part.

## I.  BACKGROUND

Plaintiff filed his complaint on February 8, 2021. (ECF No. 1). Defendants Oaks, Pascoe, and Riddle, Beer, and Garcia are correctional officers, and Defendant Cubos is a registered nurse who recorded Plaintiff's injuries. (ECF Nos. 1, 10, 12). This action stems from Plaintiff's allegations that, on August 5, 2019, Defendant Oaks stabbed him in the buttocks with a metal pencil-like handcuff key, repeatedly kicked him, and pepper sprayed him, while Defendant

1

Pascoe stood outside the van's side door and watched. (ECF Nos. 1, 10, 12, 25). Plaintiff also alleges that, after he was subjected to the excessive use of force, he suffered from bleeding buttocks, pain to groin, pain to lower torso, pain to face, pain to legs, burning of skin, burning of eyes, and burning lungs, and that while Defendants Oaks, Pascoe, Riddle, Beer, Garcia, and Cubos were aware of some, if not all, of his injuries, none of them provided or summoned medical care for those injuries. (*Id.*)

After screening, Plaintiff elected to proceed on his Eighth Amendment excessive force claim against Defendant Oaks; his Eighth Amendment failure to protect claim against Defendant Pascoe; his Eighth Amendment sexual assault claim against defendant Oaks; and his Eighth Amendment claim for deliberate indifference to his serious medical needs against defendants Oaks, Pascoe, Riddle, Beer, Garcia, and Cubos. (ECF Nos. 11, 12, 25).

On December 9, 2025, Defendants moved for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies before filing his complaint. (ECF No. 148). Among other things, Defendants argue that one of Plaintiff's grievances "was not exhausted through the third and final level of review until December 2, 2021— nearly a year *after* Plaintiff filed the operative complaint in this case." (ECF No. 148-1, p. 12). Plaintiff opposed Defendants' motion for summary judgment on December 29, 2025, arguing, among other things, that Defendants failed to properly process his grievance, and thus his claims should be deemed exhausted. (ECF No. 155, pp. 2, 6-7). Defendants have yet to file a reply in support of their motion for summary judgment.[1]

Citing their motion for summary judgment, Defendants moved to stay discovery until it was decided. (ECF No. 152). The Court denied that motion on January 7, 2026. (ECF No. 159).

## II.  MOTION TO COMPEL

On December 3, 2025, Plaintiff moved to compel Defendants Beer, Oaks, Pascoe, Riddle, and Garcia to provide further responses to certain interrogatories. (ECF No. 146). Specifically, he asks the Court to compel further responses to the following interrogatories:

- Beer – Interrogatories 1, 4, 5, 6, 7, 8, 9
- Oaks – Interrogatories 2, 4, 7, 8

---

[1] The Court recognizes that Defendants' deadline to file a reply is January 30, 2026. (ECF No. 160).

- Pascoe – Interrogatories 2, 3, 7, 8
- Riddle – Interrogatories 9, 10
- Garcia – Interrogatory 4

(*Id.* at 2).

Generally, Plaintiff argues that Defendants provided evasive or incorrect answers to each of the above interrogatories and he asks the Court to compel them to provide complete answers.

Defendants opposed Plaintiff's motion on December 22, 2025. (ECF No. 153). Citing their then pending motion to stay discovery, they argue that Plaintiff's motion should be denied because their pending motion for summary judgment on the issue of exhaustion will moot the need for additional discovery. (*Id.* at 1-2). The Court notes that this opposition was filed before the Court issued its order on January 7, 2026, denying Defendants' motion to stay discovery. (ECF No. 159, *see* ECF No. 152).

## III.  LEGAL STANDARDS

Interrogatories are governed by Federal Rule of Civil Procedure 33, and [a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(b).

In turn, Rule 26(b)(1) provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Under Rule 37 of the Federal Rules of Civil Procedure, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection," including if "a party fails to answer an interrogatory submitted under Rule 33." Fed. R. Civ. P. 37(a)(3)(B)(iii). The Court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4).

3

Lastly, the Court notes that it has broad discretion to manage discovery. *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir.2012) (noting district courts broad discretion in managing discovery and controlling the course of litigation).

## IV.  ANALYSIS

### A.  Challenged Interrogatories

Plaintiff challenges Defendants' responses to the following interrogatories:[2]

### BEER

**Interrogatory 1**

State all facts or reasons why it was necessary that you instruct "both officers to assist Williams out of the Transportation van so he could receive further decontamination and be medically evaluated" on August 5, 2019, out front of correctional treatment center (CTC) at California State Prison Corcoran (CSPC).

**Answer**

Subject to the foregoing objections, Defendant states that it is standard practice within the California Department of Corrections and Rehabilitation for two officers to escort an inmate. In addition, Plaintiff posed a greater than normal threat to the safety of staff and the security of the institution because he had assaulted Officer Oaks just prior to Plaintiff's return to California State Prison-Corcoran.

**Interrogatory 4**

When your initial crime/Incident Report (CIR) log# COR-HCO-19-08-0872, attached at Exhibit 'A' hereto, was sent back for clarification to ask "did you or any other person offer inmate Williams a change of clothing," why didn't your response thereto, ever appear in initial CIR authored by you or your subordinates Defendant's Garcia And Riddle.

**Answer**

Subject to the foregoing objections, Defendant states that the offer of the change of clothes was not a significant detail and therefore was not included in his report prepared on August 5, 2019, however, Defendant reported the offer of a change clothes in his response to the request for clarification prepared on August 8, 2019.

**Interrogatory 5**

State all facts and/or reason why you did not ensure that the inside of the transit[-]van where plaintiff was exposed to Defendant Oaks chemical

---

[2] For conciseness, the Court has included only the relevant objections to the interrogatories. Additionally, for readability, the Court has made minor alterations to quotations from Plaintiff's motion to compel without indicating each change.

agent on August 5, 2019, was decontaminated prior to Plaintiff's transport from CSPC back to California Medical Facility on August 5, 2019.

**Answer**

Subject to the foregoing objections, Defendant responds that he does not believe Plaintiff was transported to California Medical Facility in a van that was contaminated with pepper spray**.**

**Interrogatory 6**

Initially, CMF officials received information from CSPC officials that on August 5, 2019, Plaintiff "kicked the vehicle's door out toward the officer striking him in the upper torso, *see* Administrative Segregation Unit Placement notice at Exhibit 'B' hereto, however, by the time warden Ken Clark signed off on the CIR on August 12, 2019, and Plaintiff was issued the initial rules violation report (RVR) on August 22, 2019, CSPC officials alleged that "Williams quickly kicked the door of the holding cell causing the door to swing outward towards Officer Oaks. The holding cell door struck Officer Oaks in the left shin, "at what stage of this process was it decided to change, or alter, "struck in the upper torso" to "struck in the left shin," and who made the decision.

**Answer**

Subject to the foregoing objections, Defendant states the Administrative Segregation Unit Placement notice and the Rules Violation Report were not prepared by him. He does not know why the Administrative Segregation Unit Placement notice, signed by J. Appleberry, states the officer was struck in the upper torso. However, the Rules Violation Report, prepared by Officer Oaks, appears to correctly state that Plaintiff "kicked the door causing it to swing out striking [Officer Oaks'] lower left leg."

**Interrogatory 7**

What was the legal requirement for CSPC processing the two citizen's complaint against employee of CDCR on Form-2142 attached at Exhibit 'C' hereto, in September 2019.

**Answer**

Subject to the foregoing objections, to extent Plaintiff is seeking policies related to citizen's complaints, policies can be found at California Code of Regulations, title 15, section 3391 (2019) and the California Department of Corrections and Rehabilitation's Operations Manual section 31140.12 (2019).

**Interrogatory 8**

Please explain, and state all knowledge you have as to, why, subsequent notice of pending charges sent to records by Officer A. Barela on August 7, 2019, in RVR log# 000000006886118, the RVR process was held postponed for about 11-13 days, under elapsed days.

**Answer**

5

Subject to the foregoing objections, Defendant states he was not involved with the hearing of the referenced RVR and has no knowledge concerning postponement of the "RVR process" for RVR # 000000006886118.

**Interrogatory 9**

At any stage of investigations into the events giving rise to this lawsuit was camera footage from the Kings County Superior Court parking lot where transit[-]van # 266 was parked on August 5, 2019, ever reviewed or secured as part of any investigation.

**Objection**

This interrogatory [is] overly burdensome and an abuse of the discovery process. Assuming such footage ever existed, Plaintiff had equal access to request video footage via his defense attorney in the related criminal matter.

**OAKS**

**Interrogatory 2**

If it is true that your initiated securing of the holding cage door inside the rear of the transit van #266 on August 5, 2019, commence from the right side from where you were standing then to your left, then please discribe (sic) how plaintiff's "sudden kick of the holing cage door", caused the holing cage door "to swing out striking my lower left leg" and the injury you reported in your CIR.

**Answer**

Defendant believes that Plaintiff used his feet to suddenly kick the metal door of the holding cell, causing it to swing out and strike Defendant's lower left leg.

**Interrogatory 4**

Considering the length of the holding cage door that you claim swung outward to cause the abrasions and active bleeding noted on the CDCR - 7219 of you attached at Exhibit "B" herein, how did the holding cage door itself fit past your booted foot to reach contact with your left leg while swinging out.

**Answer**

The door of the rear holding cell is shaped as seen in photographs, which have been shown to Plaintiff, allowing the door to forcefully strike Defendant's leg, causing the injuries described in the CDCR Form 7219.

**Interrogatory 7**

Please give a detailed discription (sic) of the leg maneuver or method you say plaintiff carried out with the HRE restraints that allowed plaintiff to kick the door with the force to swing out and cause the two separate abrasions and active bleeding injuries noted on your CDCR - 7219, at Exhibit "B" hereto.

6

**Answer**

Defendant believes that Plaintiff forcefully kicked the door of the holding cell with his feet. Plaintiff's restraints allowed him to move, including walking, sitting, standing, stepping, turning around, and moving otherwise, and the restraints would not have and did not prevent him from being able to move his legs to kick the door of the holding cell.

**Interrogatory 8**

Please explain and provide all knowledge you have as to why the two citizen's complaint on CDCR - 2142 form filed by Flora Lee against you with office of Internal Affairs (OIA) in September 21019, were forwarded to plaintiff at California Health Care Facility (CHCF) in conjunction with correspondence from T. Duan-Associate Warden (AW) Central Operations, California State Prison Corcoran (CSPC), attached at Exhibit "C" herein.

**Answer**

Defendant does not have any personal knowledge in response to this request, but it appears from the letter attached to Plaintiff's interrogatories that T. Dunn was responding to "the letter(s) and attachments" Plaintiff "sent to the California Department of Corrections and Rehabilitation (CDCR) Office of Internal Affairs (OIA)."

## PASCO

**Interrogatory 2**

Considering that defendant Oaks was securing the cell door from his right to lock at the left state all facts which would help clarify, or explain, how "Williams kick the cell door" could cause the cell door "to swing out striking Oaks" as you wrote in your CIR.

**Answer**

The door of the holding cell was not yet secured when Plaintiff kicked the door, causing it to swing out and strike and injure Officer Oaks.

**Interrogatory 3**

Please provide a clear description of the process required when securing the holding cage door at the rear of the transit van #266 referenced in your CIR.

**Answer**

She did not reference a "process" for securing the door of the holding cell in her report. In her report, Defendant stated that Officer Oaks "followed [plaintiff] up into the van to secure the door of the holding cell." Before Officer Oaks could secure the door, however, Plaintiff kicked the door of the holding cell, causing it to swing out and strike and injure Officer Oaks.

**Interrogatory 7**

7

Why did California State Prison Corcoran (CSPC) officers, including you, demonstrate a "lack of response via the investigative employee process" as determined by the Senior Hearing Officer (SHO) in the "comment" section of RVR log #6886118 attached at Exhibit "B" hereto.

**Answer**

Defendant does not have any personal knowledge regarding the reasoning for the Senior Hearing Officer's comment. Defendant was not involved in the investigation or adjudication of the RVR referenced. In connection with responding to these interrogatories, Defendant learned that an email was sent to her on September 27, 2019, regarding RVR No. 6886118, which Defendant does not recall receiving. Defendant was assigned to transportation in September 2019.

**Interrogatory 8**

Did CSPC ever make a request to Kings County Superior Court sheriff deputies to obtain or review video footage from the courthouse parking lot security cameras where the incident described in your CIR occurred on August 5, 2019, as part of CSPC investigation or inquiry into this event.

**Answer**

Defendant does not know whether "CSPC" (presumably California State Prison-Corcoran) made a request to Kings County Superior Court sheriff deputies concerning existence of any video footage "from the courthouse parking lot security cameras where the incident described in your CIR occurred on August 5, 2019." Defendant is informed and believes that an investigator from the California Department of Corrections and Rehabilitation's Office of Internal Affairs contacted Kings County Superior Court and was advised by Kings County Superior Court that footage is saved for only fourteen days

**RIDDLE**

**Interrogatory 9**

In your CIR you go on to record that "officer Garcia and I placed inmate Williams back to the van and secured Williams in the van without further incident," please explain why you would secure plaintiff, or any inmate under your custody and care, in an area contaminated with a chemical agent without first decontaminating the area.

**Answer**

Subject to the foregoing objections, Defendant states he did not "secure plaintiff in an area contaminated with a chemical agent." Defendant does not recall any scent or odor of pepper spray and the type of pepper spray used in transportation is a foam that does not emit fumes or odors.

**Interrogatory 10**

After you secured plaintiff back inside Transit[-]van #266, following completion of the medical evaluation by defendant Cubos was plaintiff still

showing signs of being effected from exposure to a chemical agent on August 5, 2019, at CSPC.

**Answer**

Subject to the foregoing objections, Defendant states he is not sure Plaintiff was placed back in van number 266 after the medical evaluation and does not recall Plaintiff complaining of exposure to pepper spray, coughing or otherwise showing signs that he was experiencing effects of exposure to pepper spray.

## GARCIA

**Interrogatory 4**

When you report in your crime incident report (CIR) at exhibit 4 'A' herein that you and defendant Riddle "escorted Williams to housing unit "C" for decontamination." And Williams was placed in the shower," please explain the process of placing plaintiff in the shower and any security methods that came with the placement.

**Answer**

Subject to the foregoing objections, Defendant states he is unsure what Plaintiff means by the "process" of placing him the shower. Plaintiff was escorted to housing unit "C" for decontamination and was placed in the shower and the water was started, but Plaintiff refused decontamination, stating "I don't want to get wet." In addition, it was not necessary to remove Plaintiff's restraints for him to decontaminate. Plaintiff had just assaulted an officer and removing Plaintiff's restraints when it was not necessary for him to decontaminate would have created an unnecessary risk to the safety of Defendant, other officers, staff and other inmates.

(ECF No. 146, pp. 17-61).

### B. Discussion

Upon consideration, the Court will deny Plaintiff's motion to compel responses to most of the interrogatories because it finds that Defendants' answers are not evasive or otherwise incomplete. However, the Court will compel Defendant Beer to provide a further response to Interrogatory 9.

With the exception of Interrogatory Number 9, the Court concludes that Defendants provided legally adequate responses. For example, as to Interrogatory 1 propounded to Beer regarding Beer directing two officers to assist Plaintiff out of the transit van, Plaintiff argues that Beer failed to "provide a direct answer" and "offer[ed] an evasive response which . . . alters from this specific discovery request." (ECF No. 146, pp. 5-6). The Court disagrees with Plaintiff's challenge to this Interrogatory.

9

Interrogatory 1 asked Beer why Beer instructed "both officers to assist Williams out of the Transportation van so he could receive further decontamination and be medically evaluated on August 5, 2019." (*Id.* at 18) (internal quotation marks omitted). Beer provided a straightforward answer, "that it is standard practice within the California Department of Corrections and Rehabilitation for two officers to escort an inmate" and "Plaintiff posed a greater than normal threat to the safety of staff and the security of the institution because he had assaulted Officer Oaks just prior to Plaintiff's return to California State Prison-Corcoran." (*Id.*).

While Plaintiff asserts that this answer was incorrect—stating that Beer should have "concede[d] to the fact that defendant instructed subordinates to assist due to Plaintiff's exposure to a chemical agent"—Plaintiff's disagreement with Beer's explanation does not mean that Beer evaded the question. (*Id.* at 6); *see Hardy v. Davis*, No. 2:13-CV-0726 JAM DB, 2017 WL 445723, at *1 (E.D. Cal. Feb. 1, 2017) ("Under Federal Rule of Civil Procedure 37, a party propounding discovery may seek an order compelling a discovery response when an opposing party has failed to respond or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a). A mere disagreement with the responding party's responses is not a basis for objection.").

For another example, as to Interrogatory 7 propounded to Oaks regarding Plaintiff kicking a door, Plaintiff argues that Oaks is making the "false and bogus conclusionary claim" that Plaintiff "kicked [a] door," which struck Oaks.  (ECF No. 146, p. 10). The Court disagrees with Plaintiff's challenge to this Interrogatory.

Interrogatory 7 asked Oaks to "give a detailed discription (sic) of the leg maneuver or method you say plaintiff carried out with the HRE restraints that allowed plaintiff to kick the door with the force to swing out and cause the two separate abrasions and active bleeding injuries." (*Id.* at 32). Oaks responded "that Plaintiff forcefully kicked the door of the holding cell with his feet. Plaintiff's restraints allowed him to move, including walking, sitting, standing, stepping, turning around, and moving otherwise, and the restraints would not have and did not prevent him from being able to move his legs to kick the door of the holding cell." (*Id.*).

While Plaintiff states that Oaks's "description of the circumstances that caused the two abrasions is illogical," Plaintiff's disagreement with Oaks's answer does not mean that the Court must order a further response as Plaintiff requests. (*Id.* at 10). *See Edwards v. Magallanes*, No.

10

1:16-CV-00975-SAB (PC), 2018 WL 3629924, at *3 (E.D. Cal. July 27, 2018) ("Plaintiff simply does not like Grajeda's responses and merely contends different ways in which she could have answered the interrogatories or allegedly refreshed her recollection of events. However, Plaintiff' mere disagreement with the responses is insufficient.").

For another example, as to Interrogatory 10 propounded to Riddle regarding Plaintiff's exposure to a chemical agent, Plaintiff argues that Riddle's "response is a plea of ignorance coupled by selective memory."  (ECF No. 146, p. 14). The Court disagrees with Plaintiff's challenge to this Interrogatory.

Interrogatory 10 asked Riddle, "After you secured plaintiff back inside Transit[-]van #266, following completion of the medical evaluation by defendant Cubos was plaintiff still showing signs of being effected from exposure to a chemical agent on August 5, 2019, at CSPC." (*Id.* at 52). Riddle answered states that "he is not sure Plaintiff was placed back in van number 266 after the medical evaluation and does not recall Plaintiff complaining of exposure to pepper spray, coughing or otherwise showing signs that he was experiencing effects of exposure to pepper spray." (*Id.* at 52-53).

While Plaintiff argues that Riddle's response lacks "the diligence required when responding to interrogatories," the Court cannot compel Riddle to answer information that he has affirmatively stated that he does not recall. (*Id.* at 14); *see Heilman v. Lyons*, No. 2:09-CV-2721 KJN P, 2011 WL 2415032, at *3 (E.D. Cal. June 10, 2011) ("[D]efendant Echeverria is not required to provide answers he cannot recall or does not know.").

In addition to the examples discussed above, the Court has reviewed Defendants' other responses to the interrogatories—and Plaintiff's arguments why further responses should be compelled—and concludes that Plaintiff's arguments are meritless, except as to one interrogatory.

Specifically, as to Interrogatory 9, Plaintiff asked Beer, "At any stage of investigations into the events giving rise to this lawsuit was camera footage from the Kings County Superior Court parking lot where transit[-]van # 266 was parked on August 5, 2019, ever reviewed or secured as part of any investigation." (ECF No. 146, p. 23). Rather than answer this Interrogatory, Beer objected that "[t]his interrogatory [is] overly burdensome and an abuse of the discovery process. Assuming such footage ever existed, Plaintiff had equal access to request video footage

11

via his defense attorney in the related criminal matter." (*Id.*). Plaintiff argues that Beer improperly "ignore[ed]" this Interrogatory. (*Id.* at 9). The Court agrees.

Beer provides no argument as to why answering a simple question about the reviewing or securing of camera footage as part of an investigation is "overly burdensome," or "an abuse of the discovery process" nor would it appear to be so. Further, whether Plaintiff had equal access to the footage is irrelevant to Plaintiff's question about whether the footage was reviewed or secured as part of any investigation.

Accordingly, the Court will require Beer to provide a full response to Interrogatory 9.

## V.    CONCLUSION AND ORDER

Accordingly, IT IS ORDERED as follows:

1. Plaintiff's motion to compel is granted, in part, and denied, in part. (ECF No. 146).

2. Within 45 days from the entry of this order, **March 9, 2026**, Beer shall fully respond to Interrogatory 9.

3. Plaintiff's motion to compel further responses to all other interrogatories is denied.

IT IS SO ORDERED.

Dated:    **January 23, 2026**              /s/ _Erica P. Grosjean_
                                          UNITED STATES MAGISTRATE JUDGE