UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN W. WILLIAMS,<br>Plaintiff,<br>v.<br>BEER, *et al.*,<br>Defendants. | Case No. 1:21-cv-00155-KES-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON EXHAUSTION OF ADMINISTRATIVE REMEDIES BE GRANTED IN PART AND DENIED IN PART<br><br>(ECF No. 148)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Plaintiff John Williams is a state prisoner proceeding *pro se* in this civil action pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's Eighth Amendment excessive force claim against Defendant Oaks; his Eighth Amendment failure to protect claim against Defendant Pascoe; his Eighth Amendment sexual assault claim against Defendant Oaks; and his Eighth Amendment claim for deliberate indifference to serious medical needs against all defendants including Oaks, Pascoe, Riddle, Beer, Garcia, and Cubos. (ECF Nos. 1, 10, 13, 25).

\\\

Before the Court is Defendants' motion for summary judgment based on exhaustion, arguing Plaintiff improperly filed this lawsuit before receiving the third and final level decision on his grievance. (ECF No. 148). Alternatively, Defendants argue that Plaintiff's claim for deliberate indifference to serious medical needs should be dismissed against all defendants because Plaintiff's grievance did not identify certain defendants by name or include sufficient facts to put the prison on notice of his medical claim. (*Id.*). Defendants further seek a dismissal with prejudice of Plaintiff's unexhausted claims because amendment would be futile. (ECF No. 148-1 at 17).

Finally, Defendants request the Court take judicial notice of documents produced by Plaintiff during discovery (ECF No. 148-2) and the fact that a State of Emergency regarding COVID-19 was proclaimed and in place in California from March 4, 2020 until February 28, 2023. (ECF No. 189-1).

For the following reasons, the Court will recommend Defendants' motion for summary judgment be granted in part and denied in part.

## I. PLAINTIFF'S PENDING CLAIMS

Plaintiff filed his complaint on February 8, 2021 against various defendants, including Defendants Oaks, Pascoe, Riddle, Beer, and Garcia and Defendant Nurse Cubos. (ECF No. 1).

Plaintiff alleges that on August 5, 2019, Plaintiff was climbing into a prison transport van when Defendant Oaks, a correctional officer, stabbed him in the buttocks with a metal pencil-like handcuff key, repeatedly kicked him, and pepper sprayed him, while Defendant Pascoe stood outside the transport van's side door and watched as Plaintiff was repeatedly kicked by Defendant Oaks on several occasions. (ECF Nos. 1, 10, 13, 25). Plaintiff also alleges that, after he was subjected to excessive use of force, he suffered from bleeding buttocks, pain to groin, pain to lower torso, pain to face, pain to legs, burning of skin, burning of eyes, and burning lungs, and that while Defendants and Nurse Cubos were aware of some, if not all, of his injuries, none of them provided or summoned medical care for those injuries. (*Id.*)

Following screening, Plaintiff elected to proceed on his Eighth Amendment excessive force claim against Defendant Oaks; his Eighth Amendment failure to protect claim against Defendant Pascoe; his Eighth Amendment sexual assault claim against Defendant Oaks; and his

Eighth Amendment claim for deliberate indifference to his serious medical needs against Defendants Oaks, Pascoe, Riddle, Beer, and Garcia, along with Defendant Nurse Cubos. (ECF No. 11).

## II. DEFENDANTS' MOTION FOR SUMMARYJUDGMENT

### A. Defendants' Motion and Arguments

On December 9, 2025, Defendants moved for summary judgment based on non-exhaustion of administrative remedies. (ECF No. 148). Specifically, defendants argue that Plaintiff failed to exhaust administrative remedies because he filed this action before receiving the final level decision on his grievance appeal. (ECF No. 148-1 at 11-12). Defendants note that Plaintiff filed two grievances that reference being stabbed in the buttocks by Defendant Oaks on August 5, 2019. Defendants argue that Plaintiff's grievance No. 8-19-05980 "was not exhausted through the third and final level of review until December 2, 2021— nearly a year *after* Plaintiff filed the operative complaint in this case." (*Id.* at 12 (emphasis in text)). The other grievance was received on March 10, 2022, and Plaintiff received a final decision to this grievance on July 26, 2022. (*Id.* at 8). Therefore, Defendants assert that Plaintiff filed his complaint before either grievance was exhausted through the third and final level of review. (*Id.* at 11-12).

Defendants further argue that, laying the timing issue aside, neither grievance sufficiently described his allegations of deliberate indifference to serious medical needs against any defendant, and Plaintiff failed to name Defendants Oaks, Pascoe, and Riddle in his grievance. (*Id.* at 12-17). Moreover, Defendants argue that Plaintiff did not submit a health care grievance regarding the August 5, 2019 incident and therefore did not properly exhaust his medical claim against Nurse Cubos.

Finally, Defendants argue that the Court should dismiss with prejudice Plaintiff's unexhausted claims because the time to exhaust such claims has passed rendering any amendment futile. (*Id.* at 17).

In support of their motion for summary judgment, Defendants attached as Exhibit A citizen complaints labeled "OIA-1655-2019/OIA-1655-2019 Supplemental" submitted by Plaintiff's mother on September 7, 2019 and September 17, 2019. (ECF No. 148-2). Defendants

ask the Court to take judicial notice of the citizen complaints because Plaintiff filed them as part of his Scheduling and Discovery Statement (ECF No. 36).

Defendants also attach the declaration of K. Martin, Associate Director of the Health Care Correspondence and Appeals Branch, along with documents regarding Plaintiff's health care grievances. (ECF No. 148-4).

Defendants included the declaration of Howard E. Moseley, Associate Director of the Office of Appeals at the California Department of Corrections and Rehabilitation ("CDCR") with attached reports from the inmate appeals tracking system. (ECF No. 148-5).

Defendants attached the declaration of defense counsel, Arthur B. Mark III. (ECF No. 148-6). Mr. Mark's declaration attaches Plaintiffs' amended responses to interrogatories propounded by each defendant. (*Id.*).

On January 27, 2026, Defendants filed a Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment (Exhaustion).[1] (ECF No. 166).

**B. Plaintiff's Opposition**

Plaintiff initially opposed Defendants' motion for summary judgment on December 29, 2025, arguing, among other things, that Defendants failed to properly process his grievance, and thus his claims should be deemed exhausted. (ECF No. 155 at 2, 6-7). After Defendants filed their Statement of Disputed Facts, Plaintiff filed his Statement of Genuine Issues (ECF No. 174) and another opposition brief (ECF No. 177), which the Court ruled superseded his first opposition. (ECF No. 178 at 2).

In his superseding brief, Plaintiff focuses on grievance No. 8-19-05980, which he submitted before filing this lawsuit. (ECF No. 177). Plaintiff argues that Defendants failed to follow CDCR policies and procedures in processing grievance No. 8-19-05980 by 1) causing excessive and undue delay,[2] and 2) refusing to interview Plaintiff regarding his grievance

---

[1] Defendants filed a contemporaneous *nunc pro tunc* motion for leave to file the statement of undisputed facts (ECF No. 167), which the Court granted on January 28, 2026 (ECF No. 168).

[2] Plaintiff seems to have initially requested that grievance No. 8-19-05980 be expedited as reporting a sexual assault under the Prison Rape Elimination Act (ECF No. 148-5 at 80-83), but in his opposition brief, he argues generally that CDCR unduly delayed in processing his grievance appeals for over two years.

allegations and being untruthful in reporting that they did. (*Id.* at 2-11). Thus, by failing to follow CDCR policies, Defendants thwarted his access to administrative remedies.

Plaintiff argues that he did not know officer names but asserts that, despite the limited space provided on the grievance form, he sufficiently described the events to put the prison on notice of his claims and the persons involved. (*Id.* at 11).

Finally, Plaintiff asserts that, after the August 5, 2019 incident, he experienced a psychotic episode triggered by the trauma and asks the Court to excuse any deficiency in exhaustion "based on disability factors." (*Id.* at 11-12).

**C. Defendants' Reply**

Defendants filed their reply brief to Plaintiff's superseding opposition on March 23, 2026. (ECF No. 189).

Defendants dispute that extended delay in responding to Plaintiff's grievance thwarted his ability to exhaust the grievance process. (*Id.* at 4). Defendants argue that the expedited time constraints asserted by Plaintiff concern allegations under the Prison Rape Elimination Act ("PREA") that involve another offender, and Plaintiff did not make allegations against another inmate. (*Id.* at 5). Moreover, following a PREA inquiry, Plaintiff was informed that his grievance was not classified as a PREA allegation and that his appeal was being processed as a staff complaint. Thus, Plaintiff's grievance was not accepted as an emergency or PREA allegation, and the time constraints set forth in California Code of Regulations, title 15, § 3084.9 did not apply. (*Id.*).

Defendants next argue that, because Plaintiff received written notice of exceptional delay in processing his appeal, he was aware that his grievance was still being investigated and that a response would be forthcoming. (*Id.* at 6). Defendants assert that, in 2020, the appeals process had an influx of COVID-related grievances and that a State of Emergency regarding the COVID-19 pandemic was proclaimed in California, lifting the 60-day requirement for a response. (*Id.* at 7). Therefore, "exceptional circumstances accounted for the delayed third level response and does not excuse exhaustion of grievance number 19-05980 before filing this case." (*Id.*).

\\\

\\\

Defendants reiterate their arguments that Plaintiff did not name Defendants Cubos or Riddle and that Plaintiff failed to provide sufficient information to put the prison on notice of his medical indifference claims against any defendant. (*Id.* at 9).

Finally, Defendants request the Court take judicial notice that a State of Emergency regarding COVID-19 was proclaimed and in place in California from March 4, 2020 until February 28, 2023, as reflected in the Proclamation by the Governor of the State of California attached as Exhibit A to Defendants' reply brief. (ECF No. 189-1).

## III. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).

"A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," and the non-moving party

"must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387*; see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment"); *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) ("A motion for summary judgment may not be defeated, however, by evidence that is merely colorable or is not significantly probative.") (citation and internal quotation marks omitted); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1103 (9th Cir. 2000) ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.").

"All reasonable inferences must be drawn in the nonmoving party's favor, but such 'inferences are limited to those upon which a reasonable jury might return a verdict.'" *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.").

**B. Exhaustion Under the Prison Litigation Reform Act**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199–1201 (9th Cir. 2002) (*per curiam*). The exhaustion requirement applies to all prisoner suits relating to prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736, 741 (2001); *Ross v. Blake*, 578 U.S. 632, 643 (2016).

\\\

> Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. The grievance need not include legal terminology or legal theories, because [t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.

*Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016). "Thus, a prisoner's failure to list all staff members involved in an incident in his inmate grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude his exhaustion of administrative remedies." *Id.* at 958; *see McClure v. Chen*, 246 F. Supp. 3d 1286, 1294 (E.D. Cal. 2017) (denying summary judgment because grievance sufficiently put officials on notice of the nature of the wrong alleged to exhaust administrative remedies); *see also Hernandez v. I.S.U.,* No. 21-CV-04368-HSG, 2025 WL 964688, at *11 (N.D. Cal. Mar. 31, 2025) (finding grievance describing officer conduct sufficient notice to prison officials to exhaust administrative remedies); *Washington v. Salinas Valley State Prison*, No. 22-CV-05831 BLF (PR), 2024 WL 2306286, at *8 (N.D. Cal. May 21, 2024) (finding grievance provided sufficient information that specific staff could be identified through investigation and therefore plaintiff exhausted administrative remedies against one officer defendant).

There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief," and "when one (or more) does, an inmate's duty to exhaust 'available' remedies does not come into play." *Ross*, 578 U.S. at 643; *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) ("To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" (quoting *Albino*, 747 F.3d at 1171)). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."[3] (*Id.* (citing *Booth*, 532 U.S., at

---

[3] In *Ross*, the Supreme Court provided the following example:

> Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In *Booth* 's words: "[S]ome redress for a wrong is

(continued…)

736, 738)). "[T]he modifier 'available' requires the possibility of some relief." *Id.* at 738. When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy. *Id.*

For example, courts have found that extraordinary delay in responding to a prisoner's grievance may render further relief at the administrative level unavailable. *Goolsby v. Cnty. of San Diego*, No. 317CV00564WQHNLS, 2020 WL 1673036, at *3-4 (S.D. Cal. Apr. 6, 2020) (citing *Williams*, 775 F.3d at 1191 and *Albino,* 747 F.3d at 1172); *Rupe v. Beard*, No. CV-08-2454-EFS (PC), 2013 WL 2458398, at *16 (E.D. Cal. June 6, 2013) (after the inmate has waited a reasonable period of time and has received no response or notice of delay, the failure by prison officials to abide by inmate-grievance regulations must excuse the inmate's failure to exhaust; otherwise, prison officials could indefinitely delay inmates from pursuing legal remedies simply by ignoring all inmate appeals.") (citation omitted); *Goolsby*, No. 317CV00564WQHNLS, 2020 WL 1673036, at *4–5 ("As long as prisoner waits a reasonable amount of time for a response to a grievance, the failure of the prison to respond in a timely fashion sufficiently exhausts the prisoner's administrative remedies and renders further relief at the administrative level unavailable.").

"[F]ailure to exhaust is an affirmative defense under the PLRA" that a defendant must plead and prove. *Jones*, 549 U.S. at 216. In *Albino,* the Ninth Circuit held that the appropriate framework for determining failure to exhaust is a motion for summary judgment. *Albino*, 747 F.3d at 1172. To succeed on a motion for summary judgment based on failure to exhaust, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* (citation omitted). If the defendants have met their burden, "the prisoner has the burden of production" and must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. "[T]he ultimate burden of

---

> presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." *Id.,* at 736, and n. 4, 121 S.Ct. 1819. So too if administrative officials have apparent authority, but decline ever to exercise it.

*Ross*, 578 U.S. at 643 (citing *Booth v. Churner*, 532 U.S. 731, 736 and n.4 (2001)).

proof remains with the defendant." *Id.*

If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). *Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

## IV. UNDISPUTED FACTS[4]

The Court has reviewed the evidence submitted by the parties and finds that the following facts are undisputed:

On August 5, 2019, Plaintiff John Wesley Williams (CDCR No. V-34099), was an inmate incarcerated with the CDCR. (DSUF[5] 1). At this time, CDCR provided an administrative grievance system for prisoners to appeal a policy, decision, action, condition, or omission and health care policies, decisions, actions, conditions, or omissions. (DSUF 2).

Prior to June 2020, the CDCR grievance process involved three levels of review. Cal. Code Regs. tit. 15, §§ 3084-85; *Wilson v. Sherman*, No. 1:22-CV-00874-JLT-SKO (PC), 2026 WL 746997, at *2 (E.D. Cal. Mar. 17, 2026), *report and recommendation adopted,* No. 1:22-CV-00874 JLT SKO (PC), 2026 WL 912871 (E.D. Cal. Apr. 2, 2026). Therefore, in August of 2019:

> A prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") satisfies the administrative exhaustion requirement for a non-health care grievance by following the procedures set forth in California Code of Regulations, title 15, §§ 3084-3084.9.
>
> California Code of Regulations, title 15, § 3084.1(a) provides that "[a]ny inmate ... under [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate ... can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." An inmate is required to use a CDCR Form 602 to "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, § 3084.2(a). An inmate is limited to one issue, or related set of issues, per each CDCR Form 602 and the inmate "shall state all facts known and available to [them] regarding the issue being appealed at the time of submitting" the CDCR Form 602. Cal. Code Regs. tit. 15, § 3084.2(a)(1) & (a)(4). Further, the inmate "shall list all staff member(s) involved and ... describe their involvement in the issue." Cal. Code Regs. tit. 15, §

---

[4] Defendants filed their Separate Statement of Undisputed Facts. (ECF No. 166). Plaintiff responded by filing Plaintiff's Statement of Genuine Issues and writing "admit," or "deny," or providing additional explanation next to each of Defendants' undisputed facts. (ECF No. 174).

[5] "DSUF" refers to Defendants' Statement of Undisputed Facts as admitted by Plaintiff in his Statement of Genuine Issues (ECF No. 174).

> 3084.2(a)(3). If known, the inmate must include the staff member's last name, first initial, title or position, and the dates of the staff member's involvement in the issue being appealed. Id. If the inmate does not know the staff member's identifying information, the inmate is required to "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Id.
>
> Unless the inmate grievance falls within one of the exceptions stated in California Code of Regulations, title 15, §§ 3084.7(b)(1)-(2) and 3084.9, all inmate grievances are subject to a three-step administrative review process: (1) the first level of review; (2) the second level appeal to the Warden of the prison or their designee; and (3) the third level appeal to the Secretary of CDCR, which is conducted by the Secretary's designated representative under the supervision of the third level Appeals Chief. Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(a)-(d). Unless the inmate grievance deals with allegations of sexual violence or staff sexual misconduct, an inmate must submit the CDCR Form 602 and all supporting documentation to each the three levels of review within 30 calendar days of the occurrence of the event or decision being appealed, of the inmate first discovering the action or decision being appealed, or of the inmate receiving an unsatisfactory departmental response to a submitted administrative appeal. Cal. Code Regs. tit. 15, §§ 3084.2(b)-(e), 3084.3, 3084.6(a)(2), 3084.8(b). When an inmate submits an administrative appeal at any of the three levels of review, the reviewer is required to reject the appeal, cancel the appeal, or issue a decision on the merits of the appeal within the applicable time limits. Cal. Code Regs. tit. 15, §§ 3084.6(a)-(c), 3084.8(c)-(e). If an inmate's administrative appeal is rejected, the inmate is to be provided clear instructions about how to cure the appeal's defects. Cal. Code Regs. tit. 15, §§ 3084.5(b)(3), 3084.6(a)(1). If an inmate's administrative appeal is cancelled, the inmate can separately appeal the cancellation decision. Cal. Code Regs. tit. 15, § 3084.6(a)(3) & (e).
>
> Since a "cancellation or rejection decision does not exhaust administrative remedies[,]" California's regulations provide that an inmate's administrative remedies are deemed exhausted when the inmate receives a decision on the merits of their appeal at the third level of review. Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(d)(3). Further, California's regulations state that "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the [inmate] that was not included in the originally submitted CDCR Form 602 ... and addressed through all required levels of administrative review up to and including the third level." Cal. Code Regs. tit. 15, § 3084.1(b).

*Lindsey v. Tait*, No. 118CV00878LJOBAMPC, 2019 WL 2867172, at *2–3 (E.D. Cal. July 3, 2019) (citing Cal. Code Regs. tit. 15, §§ 3084-85 (2019)).

To utilize CDCR's inmate grievance and appeals process, inmates are required to submit a CDCR Form 602 HC for issues related to medical care within thirty calendar days of the event at issue. (DSUF 4).

The only grievance Plaintiff submitted before filing the complaint in this action is grievance No. CSPC-8-19-5980. (ECF No. 148-5 at 80-83; *see* DSUF 31; ECF No. 174 at 14).

Plaintiff's grievance No. CSPC-8-19-5980 states[6]:

> On August 5, 2019, in transit van #266 at the Kings County Superior Court, a male white C/O I didn't know tried to push a car key in my rectum then told me to "shut up before I force this up your black ass." The male white C/O then went to drive the van as I commenced kicking the secured caged door for help, he then came back to unlock the caged door to kick me in my face and legs yelling "I said shut the fuck up snitch ass…." However after the male white C/O secured the holding cage for help and again was repeatedly kicked by the same C/O, then a third time this male white C/O opened the cage door and repeatedly kicked me calling me "snitch"… and the fourth time the C/O chemical assault me with pepper spray while his partner, a white female C/O, I also don't know, stood by looking. Sergeant Beer then twice said not to do a CDCR 7219 of my body and when I wanted the nurse to record the cut on my buttocks, C/O Garcia said "bend over and show me," laughing. I was told to shut up or be charged with assault.

(ECF No. 148-5 at 80-83).

The form directed Plaintiff to "state briefly the subject of your appeal" and Plaintiff responded "sexual assault by excessive force: CCR., Title 15 § 3084.9(a)(5)" seeking an exception to the regular appeal process as an inmate sexual safety issue. (*Id.* at 80). Plaintiff submitted a request for interview that his 602 grievance appeal be processed as an emergency. (ECF No. 177 at 19). The parties agree that the first level of review was by-passed. (DSUF 25; ECF No. 174 at 13).

Plaintiff was informed through a second-level screening form dated August 27, 2019 that his staff complaint under PREA was forwarded to another CDCR unit at Corcoran for processing. (ECF No. 148-5 at 89). On September 6, 2019, an examiner conducted a confidential inquiry and stated that "no PREA investigation was warranted" and "no staff misconduct was substantiated."

[6] For readability, minor alterations, like changing capitalization, have been made to some of Plaintiff's quotations without indicating each change.

(ECF No. 148-5 at 95). The appeal was then designated as a staff complaint and assigned to a Staff Complaint Review Lieutenant. (ECF No. 177 at 41).

On September 7, 2019, Plaintiff's mother, Flora Lee, submitted a Citizen's Complaint Against Employees of CDCR, Log Nos. OIA-1655-2019/OIA-1655-2019 Supplemental, reporting Plaintiff's allegations from August 5, 2019. (ECF No. 177 at 44-45; DSUF 35).

Plaintiff received an Inmate Appeal Assignment Notice dated September 20, 2019 informing him that his appeal was assigned to an unidentified staff member and listed "Due Date: 10/31/2019." (ECF No. 177 at 33, 41).

Plaintiff sent a letter and attachments to the CDCR Office of Internal Affairs and the Division of Adult Institution ("DAI") regarding the events of August 5, 2019 and inquired as to the status of his appeal. The DAI confirmed that his appeal was assigned to a Staff Complaint Review – Lieutenant and "is currently under review with a due date of October 31, 2019." (*Id.* at 41).

On November 12, 2019, Plaintiff sent a letter to the Office of Internal Affairs regarding an "ongoing code of silence practices to conceal sexual, physical and chemical assault reported by 602 grievance appeal Log # CSPC-8-19-05980." (*Id.* at 49-50). Plaintiff reported that this "code of silence has thwarted not only a timely response to my appeal but also Corcoran hiring authority's duty to adhere to CCR, Title 15 §3084.5." (*Id.* at 49 (emphasis omitted)).

On December 30, 2019, Plaintiff sent another letter to the Office of Internal Affairs raising concerns that he had not yet received a response to his grievance appeal. (*Id.* at 54). Plaintiff received a response from DAI stating: "[d]ue to the allegation involving misuse of force by staff the allegation requires a review by the Institutional Executive Review Committee (IERC) for use of force compliance…[and] [t]he IERC review is currently pending completion…[and] the allegation will be presented as soon as possible as time allows." (*Id.*).

Plaintiff again sent a letter to the Office of Internal Affairs about the delay in response to his appeal. (*Id.* at 53). The DAI contacted the Appeals Office on December 10, 2019 to determine the status of his appeal. (*Id.*). DAI reported that the Appeals Office had assigned his grievance a log number and that he should "allow time to receive the completed appeal response." (ECF No. 177 at 53). The letter also advised that "your administrative remedies are not exhausted and time

constraints will initiate upon you receiving a response for this appeal." (*Id.*). DAI told Plaintiff that the Inmate Appeals Office encourages all inmates to utilize the CDCR Form 22 Inmate/Parolee Request for Interview, Item or Services process when inquiring about the status of their appeals. (*Id.*).

On January 28, 2020, Plaintiff submitted an Inmate Request for Interview, asking to know why his "excessive force staff complaint against Officer J. Oaks filed in August 2019 has not been responded to in five (5) months now." (ECF No. 177 at 38).

On February 3, 2020, CDCR sent Plaintiff a memo regarding "exceptional delay in review of appeal" pursuant to California Code of Regulations, Section 3084.8(e) and stated that the referenced appeal has been extended due to "complexity of the decision, action, or policy." (ECF No. 177 at 34). The new estimated completion date was listed as March 17, 2020. (*Id.*).

In another memo dated March 17, 2020, CDCR reported exceptional delay in review of appeal due to complexity of the decision, action, or policy. (*Id.* at 35). The completion date was extended to April 29, 2020. (*Id.*).

CDCR mailed its amended second level response to Plaintiff on April 16, 2020.[7] (ECF No. 177 at 23). In a memorandum dated March 19, 2020, CDCR stated that his appeal had been granted in part and processed as an appeal inquiry. (*Id.* at 28-29). Without providing details, the memorandum noted that Lt. C. Brown conducted an interview with Plaintiff and that Defendants Garcia and Beer were questioned as witnesses. (*Id.*). The memorandum found that staff did not violate CDCR policy with respect to one or more of the issues appealed. (*Id.*).

On May 3, 2020, Plaintiff filed for a third level appeal of his grievance. (ECF No. 177 at 23, 25). One of the reasons Plaintiff gave for appeal was that he "was never interviewed by appeal reviewer Lt. Brown" as stated in the second level review decision. (*Id.*).

On August 2, 2020, Plaintiff sent a letter to the Chief of Inmate Appeals noting that he had not yet received a response to his appeal and asking, "please complete review of my appeal so I may seek relief outside of CDCR." (*Id.*). Plaintiff did not receive a response.

---

[7] CDCR's original memorandum denying Plaintiff's second level appeal appears to be dated October 30, 2019. (ECF No. 148-5 at 86-87). However, this memorandum was received by the Appeals Coordinator on November 4, 2019, and there is no evidence that it was ever sent to Plaintiff. (ECF No. 177 at 23). Instead, there is a handwritten note indicating that a Notice of Delay to Inmate may have been sent to Plaintiff at some point thereafter. (*Id.*).

After waiting eight months after filing his third-level appeal, Plaintiff filed the underlying complaint on February 8, 2021. (ECF No. 1).

The Office of Appeals (Third Level) Decision was issued on December 2, 2021 and denied Plaintiff's grievance appeal. (ECF No. 148-5 at 78-79). (*Id.* at 55).

Plaintiff admits that he submitted no health care grievance for deliberate indifference to serious medical needs against Defendant Nurse Cubos. (DSUF 20-21; ECF No. 174 at 12).

## V. ANALYSIS

The Court recommends granting Defendants' motion for summary judgment as to Defendant Nurse Cubos and Defendant Riddle and denying Defendants' motion for summary judgment as to Defendants Oaks, Pascoe, Beer and Garcia.

### A. Judicial Notice of Citizen Complaints OIA-1655-2019/OIA-1655-2019 Supplemental and State of Emergency resulting from COVID-19

Defendants ask the Court to take judicial notice of the citizen complaints OIA-1655-2019/OIA-1655-2019 Supplemental submitted by Plaintiff's mother, Flora Lee, on September 7, 2019 and September 17, 2019 and produced by Plaintiff as part of his Scheduling and Discovery Statement. (ECF No. 148-2; ECF No. 36). Defendants also request the Court take judicial notice that a State of Emergency regarding COVID-19 was proclaimed and in place in California from March 4, 2020 until February 28, 2023. (ECF No. 189-1).

Federal Rule of Evidence 201 permits a court to take judicial notice of any facts not subject to reasonable dispute and which may be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Here, the Court notes that Plaintiff also attached citizen complaints OIA-1655-2019/OIA-1655-2019 Supplemental to his brief in opposition as Exhibit C. (ECF No. 177 at 44-50). OIA-1655-2019/OIA-1655-2019 Supplemental were handwritten on CDCR 2142 forms for State of California Citizen's Complaint Against Employees of CDCR. (*Id.*). They bear the signature of Flora Lee, at times under penalty of perjury, and include an address and two phone numbers. (*Id.*).

Accordingly, the documents are undisputed, and the Court recommends taking judicial notice of OIA-1655-2019 dated September 7, 2019 and OIA-1655-2019 Supplemental dated September 17, 2019.

Moreover, in reviewing the proclamation by the Governor of the State of California signed on February 28, 2023 and attached to Defendants' reply brief at Exhibit A (ECF No. 189-1 at 4), the Court recommends taking judicial notice that a State of Emergency due to the COVID-19 pandemic was proclaimed on March 4, 2020 and terminated on February 28, 2023.

**B. Timeliness of Plaintiff's Exhaustion of Administrative Remedies**

The Court turns to consider Defendants' argument that Plaintiff failed to exhaust administrative remedies because he filed this lawsuit before receiving the third and final level decision to his grievance appeal. The Court finds that Defendants have not carried their ultimate burden of proof in light of the undisputed evidence that local remedies were unduly prolonged, rendering administrative remedies effectively unavailable. *Goolsby*, No. 317CV00564WQHNLS, 2020 WL 1673036, at *3-4, 6.

As described above, a plaintiff must only exhaust administrative remedies that are "available." *Ross*, 578 U.S. at 635, 648. "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1171). "As long as prisoner waits a reasonable amount of time for a response to a grievance, the failure of the prison to respond in a timely fashion sufficiently exhausts the prisoner's administrative remedies and renders further relief at the administrative level unavailable." *Goolsby*, No. 317CV00564WQHNLS, 2020 WL 1673036, at *6.

As an initial matter, the Court finds that grievance No. 8-19-5980 is the only relevant grievance because it was the only grievance submitted prior to filing the underlying lawsuit. Plaintiff's mother's complaints OIA-1655-2019/OIA-1655-2019 Supplemental are not grievances within CDCR's inmate grievance process.

The Court next finds that Plaintiff had administrative remedies available to him when he first filed grievance No. 8-19-5980. However, the Court also finds that the failure of the prison to respond in a timely fashion – even considering the COVID-19 emergency – sufficiently exhausted Plaintiff's administrative remedies and rendered further relief at the administrative

level unavailable. *See Exmundo v. Scribner*, No. 1:06-cv-00205-AWI-GBC (PC), 2011 WL 3322608, at *1 (E.D. Cal. Aug. 2, 2011) ("[T]here is authority for the proposition that if a prisoner submitted a timely inmate appeal in compliance with the governing regulations and his appeal received no response, or received a response only after an extraordinary delay, the prisoner has satisfied the exhaustion requirement.") (citations omitted).

It is undisputed that Plaintiff submitted grievance No. 8-19-5980 on August 5, 2019, the same day as the incident. (ECF No. 148-5 at 80). It is also undisputed that Plaintiff sent a letter inquiring as to the status of his second level appeal and was told that it "is currently under review with a due date of October 31, 2019." (ECF No. 177 at 41). After receiving no response to his appeal, Plaintiff sent another letter to the Office of Internal Affairs on November 12, 2019 regarding the status of his appeal and again on December 30, 2019. (*Id.* at 49, 54). The DAI responded that the review is still pending and that the "allegation will be presented as soon as possible as time allows." (*Id.* at 54).

Plaintiff again sent a letter to the Office of Internal Affairs about the delay in his appeal and was told to "allow time to receive the completed appeal response." (*Id.* at 53).

Receiving no appeal response after five months, Plaintiff submitted an Inmate Request for Interview asking why his appeal was taking so long. (*Id.* at 38).

Finally, CDCR sent Plaintiff a memo regarding "exceptional delay in review of appeal" and provided a new estimated completion date of March 17, 2020. (*Id.* at 34). CDCR still provided no substantive response to his second-level appeal but reported another exceptional delay and extended the deadline to April 29, 2020 to respond. Plaintiff did not receive a response to his second-level appeal until after April 16, 2020 – eight months after he filed his appeal. (*Id.* at 28-29)

Then, after filing for a third-level appeal on May 3, 2020, Plaintiff again faced excessive delay in receiving a response. Three months later, on August 2, 2020, Plaintiff sent a letter to the Chief of Inmate Appeals noting the delay in receiving a response back to his third-level appeal. (*Id.* at 23, 25). However, Plaintiff did not receive a response to his status inquiry or his appeal until December 2, 2021 – a year and seven months after he filed for a third-level appeal.

With no response to his August 2, 2020 inquiry, no notice of exceptional delay due to the COVID-19 pandemic or other reason, and no other communication about his appeal, Plaintiff had no indication that he would actually receive a response to his appeal. After waiting another six months past the normal 60-day response time, Plaintiff filed the underlying lawsuit on February 8, 2021. (ECF No. 1).

Defendants argue that, because Plaintiff received notices of exceptional delay at the second level of appeal, that Plaintiff was on notice his appeal would be delayed during the third level as well. However, there is no evidence in the record to support this argument. Rather, each notice of exceptional delay at the second level included due dates when Plaintiff would receive a response. However, it is undisputed that Plaintiff received no notices of exceptional delay at the third level appeal, and he received no response to his status inquiries.

Reviewing the evidence and undisputed facts, the Court finds that CDCR's appeal response was unduly prolonged – even considering the COVID-19 state of emergency – and without any evidence Plaintiff had notice of delay, appeared to be a blind alley or dead end. *Ross*, 578 U.S. at 643-44. This unduly prolonged delay sufficiently exhausted Plaintiff's administrative remedies, rendering further relief at the administrative level effectively unavailable. *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172); *Rupe*, No. CV-08-2454-EFS (PC), 2013 WL 2458398, at *16 (after the inmate has waited a reasonable period of time and has received no response or notice of delay, the failure by prison officials to abide by inmate-grievance regulations must excuse the inmate's failure to exhaust; otherwise, prison officials could indefinitely delay inmates from pursuing legal remedies simply by ignoring all inmate appeals.") (citation omitted); *Goolsby*, No. 317CV00564WQHNLS, 2020 WL 1673036, at *4–5 ("As long as prisoner waits a reasonable amount of time for a response to a grievance, the failure of the prison to respond in a timely fashion sufficiently exhausts the prisoner's administrative remedies and renders further relief at the administrative level unavailable.").

\\\

\\\

\\\

\\\

Accordingly, Defendants have not carried their ultimate burden of demonstrating Plaintiff failed to timely exhaust administrative remedies, and the Court will recommend denying Defendants' motion for summary judgment based on timeliness.[8]

**C. Deliberate Indifference to Serious Medical Needs**

The Court next turns to the question of whether grievance No. 8-19-05980 exhausted Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs against all defendants in this case. After reviewing the evidence and undisputed facts, the Court will recommend that Defendants' motion for summary judgment be granted as to Defendant Nurse Cubos and Defendant Riddle and denied as to Defendants Oaks, Pascoe, Beer, and Garcia.

First, as to Plaintiff's medical indifference claim against Nurse Cubos, the parties presented the undisputed fact that:

> To utilize CDCR's inmate grievance and appeals process, inmates are required to submit a CDCR Form 602 for non-medical issues or a CDCR Form 602 HC for issues related to medical care within thirty calendar days of the event at issue.

(DSUF 4; ECF No. 174 at 9 (Plaintiff indicates hand-written "admit" next to this fact)). It is also undisputed that:

> Since 2017, for health care grievances, inmates are required to exhaust their administrative remedies through two levels of review, with the first level of review at the institutional level and the second and final (headquarters) level at the Health Care Correspondence and Appeals Branch.

(DSUF 7; ECF No. 174 at 9 (Plaintiff indicates hand-written "admit" next to this fact)). Finally, Plaintiff admitted that he did not submit a healthcare grievance regarding the care he received or did not receive from Nurse Cubos on August 5, 2019:

> Plaintiff submitted no health care grievances concerning his claim against Defendant Cubos.

---

[8] Because the Court finds that unduly prolonged delay sufficiently exhausted Plaintiff's administrative remedies, the Court need not resolve the dispute as to whether Lt. C. Brown followed CDCR policy and interviewed Plaintiff regarding his grievance appeal. (ECF No. 177 at 23, 25).

(DSUF 21; ECF No. 174 at 12 (Plaintiff indicates hand-written "admit" next to this fact)).

Given the undisputed facts, Plaintiff did not submit a health care grievance for his claims against Nurse Cubos for the health care she provided or did not provide. As such, Plaintiff failed to follow CDCR's established procedures for exhausting administrative remedies.

Moreover, in his grievance, Plaintiff also did not describe Nurse Cubos' participation in the August 5, 2019 incident. Rather, Plaintiff described wanting to seek medical attention from Nurse Cubos but that he was thwarted by Sergeant Beer and Garcia. Specifically, Plaintiff stated his grievance:

> …Sergeant Beer then twice said not to do a CDCR 7219 of my body and when I wanted the nurse to record the cut on my buttocks, C/O Garcia said "bend over and show me," laughing. I was told to shut up or be charged with assault.

(ECF No. 148-5 at 80-83). Plaintiff did not describe actually seeing Nurse Cubos for treatment or any medical care he did or did not receive from Nurse Cubos.

Thus, Plaintiff not only failed to follow prison exhaustion procedures in filing a healthcare grievance, but he also failed to put the prison on notice of the nature of his claims against Nurse Cubos. Accordingly, Court will recommend granting Defendants' motion for summary judgment for failure to exhaust as to Nurse Cubos.

The Court next turns to the medical indifference claims against remaining Defendants Oaks, Pascoe, Riddle, Beer and Garcia. Reviewing the evidence and undisputed facts in the case, the Court will recommend that Defendants' motion for summary judgment be granted as to Defendant Riddle and denied as to Defendants Oaks, Pascoe, Beer, and Garcia.

In his grievance, Plaintiff stated that "male white C/O," later identified as Defendant Oaks, stabbed him with a car key resulting in a cut on his buttocks, kicked Plaintiff in the face and legs on four separate occasions, pepper sprayed him, and left Plaintiff injured in the contaminated van. (ECF No. 148-5 at 80-83).

Plaintiff also stated in his grievance that Defendant Oaks' "partner, a white female C/O, I also don't know, stood by looking" at the interactions between Defendant Oaks and Plaintiff and Plaintiff's resulting condition (*Id.*). It is undisputed that Defendant Oaks' partner was later identified as Defendant Pascoe. (ECF No. 148-1 at 16; DSUF 12).

Plaintiff stated in his grievance that "Sergeant Beer then twice said not to do a CDCR 7219 of my body and when I wanted the nurse to record the cut on my buttocks, C/O Garcia said 'bend over and show me, laughing. I was told to shut up or be charged with assault." (*Id.*). A CDCR 7219 is a form used to document medical injuries. (ECF No.148-4 at2).

Defendants argue that Plaintiff did not identify them by name in his grievance. However, "a prisoner's failure to list all staff members involved in an incident in his inmate grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude his exhaustion of administrative remedies." *Reyes*, 810 F.3d at 658; *see McClure v. Chen*, 246 F. Supp. 3d 1286, 1294 (E.D. Cal. 2017).

Accordingly, the Court finds that Plaintiff's grievance was sufficient to put the CDCR on notice of the nature of Plaintiff's claims, including that he was injured and needed medical attention and that Defendants Oaks, Pascoe, Beer, and Garcia knew Plaintiff was injured and needed medical attention but were indifferent to his medical needs when they denied him medical treatment or interfered with Plaintiff receiving adequate medical care.

Turning to Defendant Riddle, in his complaint, Plaintiff alleges that he was "left inside the O.C. contaminated transport van for nearly an hour, in between which time Defendant Riddle came, opened the van's side sliding door to ask if Plaintiff needed medical attention," after which Plaintiff said "'yes'" and "defendant simply closed the van's door leaving plaintiff choking, burning and near blind." (ECF No. 1). However, in reviewing the grievance, there is no mention or description of Defendant Riddle or his participation in the events of August 5, 2019. There is no description of an officer asking Plaintiff if he needed medical attention and no indication anyone, but Defendants Oaks and Pascoe, interacted with Plaintiff while he was in the transport van.

As such, the Court finds that grievance No. 8-19-05980 is not sufficient to put the prison on notice of the nature of Plaintiff's claims against Defendant Riddle.

Accordingly, the Court will recommend that Defendants' motion for summary judgment be granted as to Defendant Nurse Cubos and Defendant Riddle and denied as to Defendants Oaks, Pascoe, Beer, and Garcia.

\\\

**D. Dismissal Without Prejudice**

If a court concludes that a plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). *Jones*, 549 U.S. at 223–24; *Lira*, 427 F.3d at 1175–76.

However, Defendants argue that any dismissal for failure to exhaust should be with prejudice because amendment years after the incident would be futile. (ECF No. 148-1 at 17).

Considering the evidence in a light most favorable to Plaintiff, Plaintiff has access to some type of administrative process, but the Court declines to determine the outcome of that process. The Court thus does not find, on this record, that dismissal with prejudice is appropriate.

## VI. CONCLUSION AND RECOMMENDATIONS

For the reasons explained above, IT IS RECOMMENDED that:

1. Defendants' requests for judicial notice (ECF Nos. 148, 189-1) be **GRANTED**;
2. Defendants' motion for summary judgment (ECF No. 148) be **GRANTED IN PART** and **DENIED IN PART** as follows:
   a. Summary judgment for failure to exhaust administrative remedies be GRANTED as to Defendant Nurse Cubos and Defendant Riddle;
   b. Summary judgment for failure to exhaust administrative remedies be DENIED as to Defendants Oaks, Pascoe, Beer, and Garcia; and
   c. Claims against Defendant Nurse Cubos and Defendant Riddle be dismissed without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** The parties are advised that

failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 14, 2026**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE